UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL SHANE FREEMAN,

    Plaintiff,

v.                                                Case No: 6:17-cv-489-Orl-22JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Michael Freeman, seeks judicial review of the denial of his claim for supplemental security income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the Court recommends that the decision be reversed and remanded for further consideration.

## BACKGROUND

### A.  Procedural Background

Plaintiff received SSI benefits beginning May 5, 2000, at age seven, when the ALJ determined that he was disabled under the SSI standards for a child under the age of eighteen. (Tr. 52, 60, 122.) After Plaintiff reached the age of eighteen, the Commissioner reconsidered Plaintiff's eligibility for SSI under the rules for determining disability in adults and determined that Plaintiff was no longer disabled. (Tr. 64–66, 69–81.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 489–506.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled since August 1, 2011, and accordingly denied Plaintiff's claims for benefits. (Tr. 511.) Subsequently, Plaintiff requested review from the

Appeals Council, which the Appeals Council denied. (Tr. 1–6.) Plaintiff appealed on October 22, 2015, and this Court remanded the case for further administrative proceedings. (Tr. 557–80.) While Plaintiff's appeal was pending, he filed a new application for benefits, which the Appeals Council consolidated with the remanded case. (Tr. 583–84.) After holding a second hearing, the ALJ issued an unfavorable decision on January 10, 2017. (Tr. 404–20.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

   **B.**  **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1993, claimed disability beginning as a child on May 17, 2000. (Tr. 122.) Plaintiff has a limited education. (Tr. 125.) Plaintiff has no past relevant work experience. (*Id*.) Plaintiff alleged disability due to a learning disability. (*Id*.)

In rendering the decision, the ALJ concluded that Plaintiff had never performed substantial gainful activity. (Tr. 419.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, dependent and schizotypal personality disorder, affective disorder, and learning disorder. (Tr. 407.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work "except he can never climb ladders, ropes, or scaffold but can occasionally climb ramps and stairs." (Tr. 412.) The ALJ further limited Plaintiff's RFC in finding that Plaintiff can occasionally balance, stoop, kneel, crouch, or crawl. (*Id*.) The ALJ found Plaintiff must avoid concentrated exposure to extreme heat and workplace hazards, but can perform simple, routine, and repetitive tasks with

occasional changes in a routine work setting and "no production rate pace work." (*Id*.) The ALJ also concluded that Plaintiff can occasionally interact with coworkers but is limited to minimal, superficial interaction with the general public. (*Id*.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 413.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 419.) Given Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a garment sorter, laundry folder, and retail marker. (Tr. 420.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (*Id*.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing

court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the grounds that the ALJ failed to apply the correct legal standards to the medical opinions of Dr. Theodore Weber, Dr. Kamir Marrero, and Dr. Juan Balaguer. (Dkt. 23.) For the reasons that follow, it is recommended that the Commissioner's decision be reversed and this case be remanded for further proceedings.

### A.    Opinion of Dr. Weber

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted). When assessing the medical evidence, the ALJ must state, with particularity, the weight afforded to medical opinions and the reasons for such assignment of weight. *Id.* at 1179; *see Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.").

Failure to specify the weight afforded to a medical opinion is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982) (remanding for further consideration where the ALJ's decision failed "to mention the appellant's treating physician and the weight, if any, the ALJ gave to the treating physician's evidence and opinion"). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor*, 786 F.2d at 1053 (11th Cir. 1986). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

Additionally, in determining whether a claimant is disabled, the ALJ reviews all the evidence, including medical opinions, and assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "the most" a claimant "can still do despite [his or her] limitations." *Id.* § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). To determine a claimant's RFC, an ALJ assesses all of the relevant evidence of record, and the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). The ALJ will consider the limiting effects of all the claimant's impairments, even those that are not severe, in determining the RFC. *Id.* § 404.1545(e). Importantly, while all medical opinions, including opinions regarding a claimant's RFC, must be considered, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *see Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

Here, state agency medical consultant Dr. Theodore Weber reviewed Plaintiff's medical records and completed a mental RFC assessment. (Tr. 367–68.) In his functional capacity assessment of Plaintiff, Dr. Weber found that Plaintiff is able to understand and remember simple instructions and would have difficulties with more detailed instructions. (Tr. 369.) Dr. Weber further found that Plaintiff is able to complete simple tasks and work procedures and make work decisions, but would have difficulties with maintaining attention and concentration for extended periods and carrying out detailed instructions. (*Id.*) Dr. Weber also concluded that Plaintiff is able to cooperate and be socially appropriate, but "would have difficulties accepting criticism from supervisors." (*Id.*) Last, Dr. Weber found that Plaintiff would have some difficulty reacting and adapting appropriately to the work environment and would have some difficulties setting realistic goals. (*Id.*)

In assessing Plaintiff's RFC, the ALJ afforded Dr. Weber's opinion great weight. (Tr. 415.) The ALJ also afforded two other state agency consultants great weight and addressed all three consultants' opinions together. (*Id.*) The ALJ addressed Dr. Weber's opinion, and the opinions of the other two state agency consultants, that Plaintiff has severe mental impairments resulting in moderate limitations in activities of daily living, social functioning, and concentration, persistence, or pace. (*Id.*) The ALJ also considered the consultants' opinions that Plaintiff retains the ability to understand and remember simple instructions, complete simple tasks and work procedures. (*Id.*) Further, the ALJ specifically noted the consultants' opinions that Plaintiff is able to cooperate and be socially appropriate but has difficulties accepting criticism from supervisors or having extensive interactions with customers and coworkers. (*Id.*) The ALJ concluded that the consultants' opinions are "fully supported by the weight of the evidence" and "are in essential concurrence, which renders them even more persuasive." (*Id.*)

Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. Weber. (Dkt. 23 at 13.) Specifically, Plaintiff argues that the ALJ erred in failing to account for any limitations related to Plaintiff's ability to interact with supervisors in the RFC assessment or hypothetical questions to the VE. (*Id*. at 14–15.) Plaintiff contends that his ability to interact with supervisors is important to his disability claim because the VE testified that there would be "some supervision involved" in the jobs of a garment sorter, laundry folder, and retail marker, and that in those jobs, an employee may be given a warning or let go if the employee became irritable with a supervisor multiple times. (Tr. 483–84.)

In response, the Commissioner argues that experiencing some "difficulties" is not equivalent to an inability to accept criticism. (Dkt. 24 at 8.) The Commissioner further contends that the other two state agency consultants opined that Plaintiff is capable of accepting constructive criticism and these opinions support the ALJ's RFC assessment. (Dkt. 24 at 8.) The consultants opined that Plaintiff is "generally capable of . . . accepting constructive, task-specific supervisory input." (Tr. 538, 552.) Despite the Commissioner's argument, the ALJ interpreted their opinions to mean that Plaintiff has "difficulties accepting criticism from supervisors." (Tr. 415.)

Here, "the discrete issue before the Court is whether the ALJ sufficiently explained his rationale for including only portions of Dr. [Weber's] opinion in Plaintiff's RFC." *Monte v. Astrue*, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *6 (M.D. Fla. Jan. 28, 2009). Although the ALJ's RFC determination limits Plaintiff to simple, routine, and repetitive tasks and occasional interaction with coworkers and minimal interaction with the general public (Tr. 412), it does not address Plaintiff's limitations with accepting criticism from supervisors. The ALJ offered no rationale for this exclusion.

The ALJ must consider the state agency medical consultant's findings and opinions as they are "highly qualified and experts in Social Security disability evaluation," but the ALJ is "not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513a(b). Nevertheless, without an explanation of the weight accorded to each item of evidence and an explanation of the reason for the ALJ's decision, it is impossible for the Court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 732–33 (11th Cir. 2011) (finding that "[w]ithout a clear explanation of the ALJ's treatment of [a treating physician's] opinion, [the court] cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm "simply because some rationale might have supported the ALJ's conclusion"); *Keeton*, 21 F.3d at 1066 ("The Secretary's failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal"). Because the ALJ did not explain why certain portions of Dr. Weber's opinion were not incorporated in the RFC finding despite affording his opinion great weight, the Court is unable to determine how the ALJ evaluated Dr. Weber's opinion, and the Court will not inject its own assumptions when the decision itself is silent.

Next, the Court considers whether the ALJ's error was harmless. Harmless error occurs when an incorrect application of the regulations does not affect the ALJ's ultimate findings. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ's error harmless where the error did not affect the decision); *see also Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its

ultimate findings, the error is harmless, and the ALJ's decision will stand"). Here, the ALJ's failure to include Plaintiff's limitations with accepting criticism from supervisors in the RFC assessment was not harmless. As Plaintiff argues, Plaintiff's ability to interact with supervisors may be important to his disability claim and ability to gain and keep employment. (Dkt. 23 at 15.) For example, the VE testified that there would be "some supervision involved" in the jobs of a garment sorter, laundry folder, and retail marker and that in those jobs, an employee may be given a warning or let go if the employee became irritable with a supervisor multiple times. (Tr. 483–84.) Accordingly, remand for the ALJ's further explanation of her evaluation of Dr. Weber's opinion, and its effect, "if any," on Plaintiff's RFC, is warranted. *Dempsey*, 454 F. App'x at 734; *Knoblock v. Colvin*, No. 8:14-CV-00646-MCR, 2015 WL 4751386, at *3–4 (M.D. Fla. Aug. 11, 2015) (finding reversal necessary "because the ALJ failed to sufficiently articulate her reasons for rejecting portions of [an examining physician's] opinion while accepting others," because "in the absence of an explanation for reasons for excluding these limitations, the Court may not draw inferences from the ALJ's discussion to find clarity"); *Monte*, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *6–7 (remanding for the ALJ to "re-address [a nonexamining state agency physician's] assessment of Plaintiff and specifically articulate reasons for either accepting or rejecting each aspect of" the opinion).

      **B.**      **Opinion of Dr. Marrero**

Plaintiff next contends that the ALJ erred in assessing the opinion of psychologist Dr. Kamir Marrero. (Dkt. 23 at 16.) Dr. Marrero conducted a vocational rehabilitation evaluation of Plaintiff in June 2011. (Tr. 781–86.) After conducting various tests, Dr. Marrerro concluded that there was no indication that Plaintiff has a learning disorder, but his personality testing indicated a dependent and schizotypal personality disorder with avoidant and depressive personality traits.

(Tr. 785.) Dr. Marrero further opined that in work settings, Plaintiff "would work optimally under moderately structured and moderately supervised positions following his initial training phase" and his "work performance would likely suffer under moderate levels of stress." (*Id*.)

In her decision, the ALJ accorded Dr. Marrero's opinion great weight. (Tr. 415.) The ALJ specifically referenced Dr. Marrero's opinion that Plaintiff would work optimally under moderately supervised positions. (*Id*.) The ALJ reasoned that Dr. Marrero's opinion was based on his own professional observations and supported by objective findings on examination, which included a mental status examination. (*Id*.) The ALJ stated that she included limitations in Plaintiff's RFC assessment consistent with Dr. Marrero's assessment, including "significant social restrictions in terms of public interaction" and restricting Plaintiff to "simple, routine, and repetitive tasks with no production rate pace work and no more than occasional changes in work setting." (Tr. 415–16.)

Plaintiff argues that the ALJ failed to explain why she did not account for Dr. Marrero's opinion that Plaintiff would need a "moderately supervised" position. (Dkt. 23 at 17.) In response, the Commissioner contends that the RFC assessment fully incorporates Dr. Marrero's opinion and that Dr. Marrero's opinion does not mean that Plaintiff is only able to work in settings with moderate supervision. (Dkt. 24 at 9.)

Again, similar to Dr. Weber's opinion, the ALJ afforded Dr. Marrero's opinion great weight and incorporated most of his opinion into Plaintiff's RFC. Yet, the ALJ did not explain why Dr. Marrero's opinion regarding "moderate supervision" was not included in the RFC, nor did the ALJ address the opinion on supervision further than affording it great weight. It is unclear what "moderately supervised" employment would entail. However, in light of the above assessment of Dr. Weber's opinion, Dr. Marrero's opinion on Plaintiff's ability to accept

supervision from an employer may be relevant to the analysis on remand. As addressed above, the ALJ's error is not harmless because the VE testified that Plaintiff would require some supervision in the jobs she testified Plaintiff could perform and that an employee could be let go if the employee became irritable with a supervisor multiple times. (Tr. 483–84); *see Diorio*, 721 F.2d at 728; *see also Tillman*, 559 F. App'x at 975–76. The Court therefore recommends remand so that the ALJ can explicitly consider and explain the weight accorded to Dr. Marrero's opinion that Plaintiff would work optimally in moderately supervised positions. *See Dempsey*, 454 F. App'x at 734; *Knoblock*, No. 8:14-CV-00646-MCR, 2015 WL 4751386, at *3–4; *Monte*, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *6–7.

### C.     Opinion of Dr. Balaguer

Plaintiff last argues that the ALJ erred in failing to assess Dr. Juan Balaguer's opinion that Plaintiff was impaired for work and school. (Dkt. 23 at 18.) Plaintiff argues that pursuant to Social Security Ruling ("SSR") 96-5p the ALJ was required to weigh this opinion even though it may be considered an opinion reserved for the Commissioner. (*Id.*) SSR 96-5p, which was in effect at the time of the ALJ's decision but has since been rescinded, states that "adjudicators must always carefully consider medical source opinions about any issue, including opinons about issues that are reserved to the Commissioner." *Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P (S.S.A. July 2, 1996).

On October 29, 2015, Plaintiff treated with Dr. Balaguer at Orlando Behavioral Health for a scheduled medication management appointment. (Tr. 857.) Upon psychiatric examination, Dr. Balaguer noted that Plaintiff presented with a depressed and anxious mood, but appeared well dressed and groomed appropriately with guarded behavior. (Tr. 858.) Dr. Balaguer further noted that Plaintiff's speech was well articulated, his thought process was logical, and he had no

abnormal or psychotic thoughts present at the time. (*Id*.) Plaintiff's judgment for social situations and everyday activities appeared mildly impaired, but he was oriented to name, time, place, and person with recent and remote memory intact and appropriate use of language. (*Id*.) His attention span and concentration were moderately impaired. (*Id*.) In his functional assessment, Dr. Balaguer noted that Plaintiff was "impaired for work/school" but "is able to care for self and perform actions of daily living." (Tr. 859.) Dr. Balaguer diagnosed Plaintiff with bipolar disorder and noted in the treatment plan to continue his medication, Latuda. (*Id*.)

In her decision, the ALJ addressed the records from Orlando Behavioral Health from September 11, 2015 through November 5, 2015. (Tr. 414.) The ALJ specifically addressed that Plaintiff was diagnosed with bipolar disorder and prescribed Latuda. (*Id*.) The ALJ noted that Plaintiff's mental status examinations showed that he "remained with a depressed and anxious mood and liable and blunted affect but with logical thought process, mildly impaired judgment for social situations and everyday activities, and no suicidal thoughts." (*Id*.) The ALJ further noted that according to the mental status examinations, Plaintiff "remained alert and oriented in all spheres intact recent and remote memory and moderately impaired attention span and concentration." (Tr. 414–15.) Thus, the ALJ clearly considered the records from Orlando Behavioral Health, including Dr. Balaguer's opinion, in accordance with SSR 96-5p. However, the ALJ did not assign any weight to Dr. Balaguer's opinion that Plaintiff is impaired for work and school.

Nevertheless, as stated by Plaintiff, Dr. Balaguer's opinion that Plaintiff is impaired for work and school is not a medical opinion entitled to deference but instead is an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d) (explaining that opinions on issues reserved to the Commissioner "are not medical opinions" and "[a] statement by a medical source

that you are 'disabled' or 'unable to work' does not mean that" the claimant will be determined to be disabled); *Denomme*, 518 F. App'x. at 877–78 ("In addition, the Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled."). Thus, Dr. Balaguer's opinion on Plaintiff's disability was not entitled to any weight. *Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x. 731, 733 (11th Cir. 2017) (finding physician's opinion that it would be difficult for claimant to have a full-time job was an issue reserved to the Commissioner and not entitled to any weight); *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x. 833, 835 (11th Cir. 2017) ("[N]o special significance is given to an opinion on issues reserved to the Commissioner."). Consequently, Plaintiff's last contention does not warrant further analysis on remand.

## II.     CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the recommendations set forth above.

2. The Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on May 23, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

- 15 -

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Anne C. Conway
Counsel of Record